IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RICHARD HALL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 04 C 3377 |
| v. ) | |
| ) | Magistrate Judge Nan R. Nolan |
| JO ANNE B. BARNHART, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Richard Hall ("Hall") seeks judicial review of the final decision of the Defendant Commissioner of Social Security which found that Hall had been overpaid $51,670 in Disability Insurance Benefits for the months of August 1994 through May 1998. The ALJ denied Hall's request for waiver of the overpayment, finding that he was not "without fault" in causing the overpayment. Cross-motions for summary judgment are pending. For the reasons stated below, Plaintiff's motion is granted and Defendant's motion [15-1] is denied. The decision of the ALJ is reversed and remanded for further administrative proceedings consistent with this opinion.

## FACTUAL BACKGROUND

Richard Hall was found disabled with an onset date of January 11, 1988 due to bilateral carpal tunnel syndrome (R. 84, 139). He returned to work in 1990 and completed a nine-month trial work period in June 1991. (R. 20). Following the trial work period, Hall continued to have monthly earnings in excess of the $500.00 per month regulatory limit for substantial gainful activity ("SGA"). Id. In February 1992, the Social Security Administration ("SSA" or "Administration") determined that Hall's disability had ceased due to his SGA effective July 1991 and that monthly benefits should have ceased effective October 1991. Id. Although the Administration stopped Hall's monthly

payments in February 1992, it also awarded him a 36-month extended period of disability (also known as a "reentitlement period") beginning July 1991 and ending June 30, 1994. Id.

Following the suspension of payments, the Administration conducted a continuing disability review and determined that Hall had experienced medical improvement and was no longer eligible for benefits as of May 1992. (R. 139). Hall appealed this decision and a hearing was held in front of ALJ Delbert Remington on April 13, 1993.[1] (R. 138-142). On November 25, 1994, ALJ Remington found that Hall continued to be medically disabled. (R. 20, 138-142).[2]

In December 1994, Hall former employer, Trans World Airlines ("TWA"), sent the Administration a letter indicating that Hall had not been paid substantial wages since October of 1992. (R. 45-46). By letter dated January 15, 1995, the Administration advised Hall that his benefits had been suspended due to his work activity. (R. 44, 52-53). On January 20, 1995, the Administration determined that Hall was entitled to benefits for November 1992 and all subsequent months. (R. 56, 57-58). Hall's benefits were reinstated in January 1995, retroactive to November 1992, and he was given a check in the amount of $27,624.50. (R. 57-58).

Hall subsequently received a notice from the Administration dated November 1, 1996, stating his benefit amount would be increased to give him credit for his earnings in 1995 which were not

---

[1] In his opinion, ALJ Remington noted that the Administration had found that Hall's entitlement had ceased due to his SGA, effective July 1991. (R.141). Hall did not appeal this determination, and the issue was not before ALJ Remington. As a consequence, July 1991 is when Hall's 36-month reentitlement period began. If Hall performed SGA at any time after June 30, 1994, he was no longer entitled to benefits.

[2] What ALJ Remington apparently did not know when he issued his decision was that Hall had returned to work for The Home Depot in August of 1994, where he was earning wages in excess of the regulatory limit. (R. 38). In his testimony before ALJ Pappert on February 20, 2003, Hall stated that he called the Administration in October 1994 to inform them he had returned to work. Id. Apparently, this information was not received by ALJ Remington prior to the date on which he issued his decision. (R. 20).

included when benefits were originally calculated. (R. 61). On November 5, 1996, Hall wrote a letter to the Administration in which he indicated he had returned to work. (R. 62). In the letter, Hall also indicated he had "called the SS office several times to report [his] return to work" and to ask where he should return his disability checks but each time he was told to keep them. Id. He concluded the letter by asking that it be forwarded to the "proper source." Id.

In October 1997, the Administration received a wage report from Home Depot. (R. 65-66). The wage report showed Hall had returned to work in July 1994 and earned income in excess of the regulatory limit beginning August 1994. Id. Accordingly, the Administration notified Hall by letter dated November 20, 1997 that his earnings were again above the substantial gainful work level and he was not entitled to checks for December 1993, June 1994, August 1994, and later. (R. 67). By letter dated February 17, 1998, the SSA further informed Hall that he was also not entitled to a check for November 1992. (R. 68).

In June 1998, the Administration notified Hall that he had been overpaid $54,764.00 in benefits. (R. 74-76). Hall moved unsuccessfully for reconsideration of his benefit cessation. (R. 85-87). Hall next filed a Request for Waiver of Overpayment Recovery which was denied initially and on reconsideration. (R. 90-98, 101-04). He then filed a request for hearing and on February 20, 2003, a hearing was held in front of ALJ Edward Pappert. (R. 26). Hall, represented by counsel, testified at the hearing. (R. 33-43).

Hall testified he first filed for benefits in 1988, had a hearing, and was found disabled. (R. 35). Around November of 1990, he returned to full-time work with his previous employer, TWA. Id. After he returned to work, he still continued to receive monthly disability checks. (R. 35, 36). He notified the Administration via the "800" number in either November or December of 1990 that

he was back at work. Hall was told that he was entitled to benefits for a work trial period. (R. 36). The Administration also sent him a booklet thereafter explaining the work trial period. Id. He stopped working for TWA in September of 1992. Id. At some point, the Administration stopped sending checks because his work trial period had ended. (R. 36-37). At that time, Hall had to return approximately $3,841.40 to the Administration. (R. 37).

In August 1994, Hall began working at The Home Depot. (R. 38).[3] Hall testified that a couple months later (around October 1994) he called the 800 number for the Administration to report that he had returned to work. Id. Sometime in 1995, the Administration started sending Hall checks again. (R. 39). After the Administration started sending checks, Hall called the Administration's 800 number because he had received a notice in January 1995 indicating that he was not entitled to benefits due to his work activity. Id. Hall testified that when he called the 800 number, the Administration's representative said: "[t]hat I was entitled to it, just that I was entitled to it, I can't remember exactly now." Id. Hall took the money from one check "and I put it away, I figured, well, maybe something will transpire in the meantime." Id. Hall also said he "put the money aside" because he "wasn't sure." (R. 34). In response to questioning by the ALJ, Hall stated that he did not go to a local social security office to explain his situation because when he had previously gone there it had been "such a hassle to wait" and he figured calling the 800 number was appropriate since it was "going direct." (R. 34).

Hall further testified that in November of 1996, he received a letter from the Administration stating his benefits were being increased to give him credit for additional earnings. (R. 39-40). In

---

[3] Hall testified that from 1995 through 2001, he earned more than $30,000 every year while working at the The Home Depot. (R. 33).

response, he wrote a letter to the Administration in Baltimore but did not recall receiving a reply. (R. 40). The Administration contacted him in 1998 in a notice stating his benefits were stopping. (R. 40).

On September 26, 2003, the ALJ issued a decision finding that Hall was overpaid benefits from August 1994 through May 1998. (R. 24). The ALJ also found that Hall was not without fault in causing the overpayment. (R. 24). The ALJ found that while Hall "appeared to be a relatively credible witness" and "probably did make the calls to the Administration's 800 number to which he testified," Hall "did not press the issue once he was told that he was entitled to the benefits." (R. 24). The ALJ concluded that because Hall was informed in ALJ Remington's 1994 decision that his reentitlement period had expired, he was fully aware that his payments should have been stopped when he returned to work. Id. Because Hall did not follow through on this awareness by contacting his local social security office, he failed to furnish information to the Administration which he either knew or should have known was material to a determination of entitlement. Id. Waiver of the overpayment was denied. (R. 25). The ALJ's decision became the final decision of the Administration when the Appeals Council denied review on April 15, 2004. (R. 7-9).

## DISCUSSION

The standard of review in disability cases is limited to whether the final decision of the Commissioner is supported by substantial evidence in the record and based on the proper legal criteria. Ehrhart v. Secretary of Health & Human Services, 969 F.2d 534, 538 (7th Cir. 1992). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1972). If the record contains such support, this Court must affirm the decision of the Commissioner unless he has made an error of law.

Veal v. Bowen, 833 F.2d 693, 696 (7th Cir. 1987). In reviewing the ALJ's decision, this Court is not entitled to "reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." Clifford v. Apfel, 227 F.3d 863, 869 (7th Cir. 2000).

When a recipient of benefits is overpaid, the Commissioner shall require "the overpaid person . . . to refund the amount in excess of the correct amount." 42 U.S.C. § 404(a)(1)(A). However, repayment may be waived (1) if the recipient is "without fault" with respect to the overpayment and (2) if such a recovery would either defeat the purpose of the Social Security Act or would be against equity and good conscience. 42 U.S.C. § 404(b); 20 C.F.R. § 404.506(a). "Although the Administration may have been at fault in making the overpayment, that fact does not relieve the overpaid individual . . . from liability for repayment if such individual is not without fault." 20 C.F.R. § 404.507.

Whether the claimant is without fault is a threshold determination. The claimant bears the burden of demonstrating that he was without fault. Watson v. Sullivan, 940 F.2d 168, 170 (6th Cir. 1991). If the claimant is not without fault, the ALJ need not address the second requirement. Heins v. Shalala, 22 F.3d 157, 163, n.2 (7th Cir. 1994). Because the ALJ found that Hall failed to show that he was without fault in causing the overpayment, he did not consider the second prong of the waiver analysis. This Court's review is therefore limited to determining whether the Commissioner's decision on the fault issue is supported by substantial evidence.

The ALJ's decision that Hall is not without fault is not supported by substantial evidence in the record. The ALJ rested his decision on the fact that Hall did not report his return to work in-person to his local social security office. The ALJ viewed the absence of such an in-person visit as

a failure "to furnish information to the Administration which he either knew or should have known was material to a determination of entitlement." (R. 24). The ALJ reasoned that Hall had a "responsibility" to visit his local social security office to report that he had returned to work. Id.

The ALJ's finding that Hall failed to furnish material information to the Administration is not supported by substantial evidence. Hall testified that he timely informed the SSA of his return to work. Hall stated that he called the SSA's 800 number in October 1994 to report that he had returned to work in August 1994. (R. 37). Sometime in 1995, the SSA started sending benefit checks. (R. 39). Hall testified that he then called the SSA's 800 number again and was told that he was entitled to the benefit checks. Id. In November 1996, Hall received a letter from the SSA stating that his benefits were being increased to give him credit for additional earnings. (R. 39-40). In response, Hall immediately wrote a letter to the SSA in Baltimore reporting that he had returned to work at The Home Depot. (R. 32, 40, 62). The SSA did not contact Hall regarding his entitlement to benefits until 1998 when he received a notice stating that his benefits were stopped. (R. 40). ALJ Pappert believed Hall's testimony. The ALJ found Hall "to be a relatively credible witness" who "probably did make the calls to the Administration's 800 number to which he testified." (R. 24). Because the ALJ explicitly found that Hall reported his return to work to the SSA via the 800 number, the record does not support the ALJ's finding that Hall withheld information material to an entitlement determination.

The ALJ's second mistake in evaluating whether Hall was without fault is his finding that Hall had a "responsibility" to visit his local social security office to report that he had returned to work. There is nothing in the record to suggest that Hall should be charged with this type of obligation. The ALJ cited no statutory or regulatory requirement that Hall visit his local social

security office, as opposed to calling the 800 number, to report his return to work. In fact, the notices Hall received from the Administration prior to notification of the overpayment instructed him to call the 800 number if he had any questions. (R. 44, 61). While the January 15, 1995 notice also stated "[i]f you *prefer* to visit one of our offices, please check the local telephone directory for the office nearest you . . .," the notice does not express any requirement or even a preference for visiting a local office. (R. 44) (emphasis supplied).

Moreover, Hall's prior experience with the Administration undermines the ALJ's finding that he had a responsibility to report his return to work in-person at a local social security office. Hall had used the Administration's 800 number to effectively convey similar information in the past. For example, Hall testified that in November or December of 1990, when he initially returned to work with TWA, he notified the Administration via the 800 number of his return to work. (R. 36). That information apparently reached the proper source because the SSA did in fact stop sending him benefit checks. Id. Hall was also put on the nine month trial work period following the phone call and was mailed a booklet by the Administration explaining how the trial work period operated. Id. The ALJ did not discuss how Hall's prior interaction with the Administration may have led him to reasonably believe that calling the Administration's 800 number was sufficient to meet his reporting requirement.

The ALJ's decision was also based in part on Hall's "awareness of the necessity of making a timely report of a return to work." (R. 24). This is not substantial evidence that Hall knew or should have known to report his return to work in-person at a local social security office. Awareness of his reporting responsibility does not translate into awareness of a responsibility to report his return to work in-person at a local social security office. The ALJ credited Hall's testimony that he did

report his return to work to the SSA's 800 number. His failure to report his return to work in-person at a local social security office does not create an inference that he failed to furnish material information to the SSA.

If the SSA informed Hall that he needed to report his return to work in-person at a local social security office, he certainly would be at fault. The ALJ cited no evidence showing that Hall was informed that he must report his return to work in-person at his local social security office. Moreover, there is no evidence in the record that at the relevant time, the SSA regularly informed persons receiving benefits that they must report a return to work in-person at a local social security office. There is also no evidence indicating that a local social security office representative would have provided him different information than the 800 number representative.

Citing 20 C.F.R. § 404.507(c), the Commissioner's attorney argues that evidence in the record shows that Hall is not entitled to a wavier of the overpayment because he accepted payments which he knew or should have know were incorrect. The Commissioner's argument is an improper post hoc attempt to justify the ALJ's decision. The ALJ did not reject Hall's claim on the ground that he accepted payment which he either knew or could have been expected to know was incorrect. Rather, the ALJ found that Hall "failed to furnish information to the Administration which he either knew or should have known was material to a determination of entitlement." (R. 24). See 20 C.F.R. § 404.507(b). "[A] simple but fundamental rule of administrative law . . . is . . . that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action. Burlington Truck Lines Inc. v. United States, 371 U.S. 156, 169 (1962)

(quoting SEC v. Chenery Corp., 332 U.S. 194, 196 (1947)). This Court cannot accept the Commissioner's post hoc argument.

The ALJ also erred in not expressly considering the effect of 20 C.F.R. § 4040.510a. This regulation provides that a person who accepts an overpayment in reliance on erroneous information from an official source within the SSA with respect to the interpretation of a pertinent provision of the Act or regulations is deemed without fault. This may be what occurred in this case. Hall testified that he called the Administration 800 number of two occasions to report his return to work and was told he was entitled to continue to receive benefits. (R. 38-39). The ALJ credited Hall's testimony regarding the inaccurate information provided in the telephone calls. (R. 24) (finding that Hall "probably did make the calls to the Administration's 800 number to which he testified, [but] did not press the issue *once he was told that he was entitled to the benefits*.") (emphasis added). Nonetheless, the ALJ did not mention § 404.510a in his decision. The ALJ concluded that Hall was at fault "regardless of whether the information he received in his calls to the Administration's 800 number was correct or not." (R. 24). Contrary to the ALJ's statement, § 404.510a indicates that reliance on erroneous information from an Administration representative is relevant to the question of fault. On remand, the ALJ must explicitly consider the applicability of this pertinent regulation.[4]

Finally, it is not clear from the ALJ's decision whether the ALJ applied the appropriate overpayment regulation. The regulations provide for two types of overpayments: deduction overpayments and entitlement overpayments. See 20 C.F.R. §§ 404.510 and 404.510a. "An

---

[4] The Commissioner's attorney argues that § 404.510a does not apply because there is no evidence that the information provided by the SSA employees was with respect to interpretation of the Act or regulations. The ALJ did not make this finding, and this Court is not authorized to affirm his decision on a rationale different than those articulated in his decision. Burlington Truck Lines, 371 U.S. at 169.

entitlement overpayment occurs when an individual fails to meet one or more requirements for entitlement to such payment or where a benefit payment exceeds the amount to which the individual is entitled." Tomic v. Sullivan, 1992 WL 43241 at *3 n.5 (N.D. Ill. March 2, 1992) (citing 20 C.F.R. 404.510a). "A deduction overpayment is generally caused by excess earnings." Id. "The test of 'fault' in the case of each type of overpayment is distinct." Id. In an entitlement overpayment case, the individual is at fault if the incorrect payment resulted from: (a) an incorrect statement made by the individual which he knew or should have known to be incorrect; (b) failure to furnish information which he knew or should have known to be material; or (c) the individual's acceptance of a payment which he knew or could have been expected to know was incorrect. 20 C.F.R. § 404.507. In a deduction overpayment case, an individual will not be "without fault" if the Administration has evidence in its possession which shows either a lack of good faith or failure to exercise a high degree of care in determining whether circumstances which may cause deductions from his benefits should be brought to the attention of the Administration by an immediate report or by return of a benefit check. 20 C.F.R. § 404.511.

Although the Administration's records indicate that this is an entitlement overpayment case, the ALJ may have applied the "high degree of care" deduction overpayment standard to Hall's conduct. (R. 105). The ALJ's decision cites 20 C.F.R. § 404.507, the criteria for finding fault in an entitlement overpayment case, in his initial recitation of the pertinent regulations. (R. 22). The ALJ's discussion of the evidence indicates that he found Hall not to be without fault because he did not report his return to work in-person to the SSA and therefore,"he failed to furnish information to the administration which he either knew or should have known was material to a determination of entitlement." (R. 24). This statement applies the regulation dealing with entitlement overpayments.

See 20 C.F.R. § 404.507(b). The ALJ then concluded that by failing to report his return to work in person to his local social security office, Hall "did not exercise the due diligence and care required of an individual who is receiving benefits . . . ." (R. 24). This statement may be read to employ the "high degree of care" criteria set forth in 20 C.F.R. § 404.511 dealing with deduction overpayments. On remand, the ALJ shall clarify the test of fault being applied and apply the correct standard.

## CONCLUSION

For the reasons stated above, Plaintiff's Motion for Summary Judgment is granted, and the Commissioner's Motion for Summary Judgment is denied. Pursuant to sentence four of 42 U.S.C. 405(g), the ALJ's decision is reversed and the case is remanded to the Social Security Administration for further proceedings consistent with this opinion. The Clerk is directed to enter final judgment in favor of the Plaintiff and against the Commissioner in accordance with Rule 58 of the Federal Rules of Civil Procedure.

ENTER:

*Nan R. Nolan*

Nan R. Nolan
United States Magistrate Judge

Dated: April 28, 2006